**UNITED STATES FIDELITY AND GUARANTY COMPANY, Appellee,**

v.

**KAMMEYER et al., Appellants;**

**Nationwide Insurance Company, Appellee.**

[Cite as *United States Fid. & Guar. Co. v. Kammeyer* (1994), 97 Ohio App.3d 101.]

Court of Appeals of Ohio,
Ottawa County.

No. 93OT063.

Decided Sept. 16, 1994.

102

*James R. Jeffery* and *Joan C. Szuberla,* for appellee United States Fidelity and Guaranty Company.

*James T. Murray,* for appellants.

*Richard A. Cathey,* for appellee Nationwide Insurance Company.

---

Sherck, Judge.

This is an appeal from orders of the Ottawa County Court of Common Pleas which granted summary judgment to two insurance companies in a declaratory action. Because we find that appellee USF & G failed to establish a knowing and express waiver of underinsured motorists coverage and that appellee Nationwide is obligated by its insurance contract to provide underinsured motorists coverage, we reverse the trial court's decisions.

Appellants are Beverly J. Kammeyer (individually and as administrator of the estate of her son, David Kammeyer) and Gene Kammeyer, who is David Kammeyer's father. On April 3, 1990, David and Gene Kammeyer were returning from a job site in a truck owned by their employer, Mack Iron Works, Inc. ("Mack Iron"), when another vehicle crossed into their lane, striking them head-on. As a result of this collision, Gene Kammeyer was seriously injured; David Kammeyer was killed.

Because the amount of liability insurance on the tortfeasor's vehicle proved to be insufficient to compensate them for their damages, appellants filed an underinsurance claim with Mack Iron's insurer, appellee United States Fidelity and Guaranty Company ("USF & G"). Appellants also sought underinsured motorists ("UM") coverage for damages arising from David Kammeyer's death from their own insurer, appellee Nationwide Insurance Company ("Nationwide").

On June 19, 1992, appellee USF & G filed suit seeking a declaration that appellants were entitled to no more than $25,000 [1] pursuant to the terms of the policy it had issued to Mack Iron. On appellants' motion, appellee Nationwide was joined as a party defendant. Following discovery, all parties moved for summary judgment. The trial court denied appellants' motion, but it granted those motions filed by appellees. It is from these judgments that appellants bring this appeal.

Appellants denominate no formal assignments of error. We shall, however, construe the following statements as assignments of error:

"Facts relevant to USF & G

"I. The court erred in granting summary judgment to USF & G. There was no proof of the knowing, explicit waiver required by law. The court incorrectly shifted the burden of proof to the defendant.

---

1. Appellee USF & G later amended this request to a declaration of $50,000 maximum underinsurance coverage.

"II. The documents produced by USF & G did not show any waiver of coverage, much less the knowing and explicit waiver required by law.

"III. The testimonial evidence brought by USF & G is insufficient to show the knowing, explicit waiver of uninsured and underinsured coverage required by law.

"IV. No knowing, explicit waiver of *underinsured* coverage was proven.

"V. The documents and testimony show unequivocally that uninsured and underinsured coverage was never offered or rejected in connection with the umbrella policy sold by USF & G to Mack Iron. This dispositive evidence was ignored by the court.

"VI. The court erred in considering the bargaining power of the parties to the contract and ignoring the claimant.

"Facts relevant to Nationwide Insurance Company

"I. There was no need for the court to resort to *Rotsinger* and *Hill* to 'interpret' the insurance contract. The insurance contract plainly provided coverage regardless of whether the decedent was an 'insured' or not.

"II. Even if the policy language did not unambiguously provide coverage regardless of the 'insured' status of the victim, the trial court erred by failing to apply Ohio Revised Code § 3937.18 correctly.

"III. The court should not have considered itself constrained by *Rotsinger v. State Farm Insurance Co.*, 78 Ohio App.[3d] 696 [605 N.E.2d 1281] (1992) and *Hill v. State Farm Mutual Auto Ins. Co.*, Lucas App. No. L–87–382 [1988 WL 121287]. The cases are readily distinguishable, and have been overcome by the weight of more recent authority.

"A. *Rotsinger* and *Hill* are readily distinguishable from this case, to the point where they have no applicability whatsoever.

"B. This Court, guided by subsequent authority, has repudiated its reasoning in *Rotsinger* and *Hill*.

"C. This Court should join other courts of appeal and repudiate *Rotsinger* and *Hill*."

▮ Although arising from the same set of underlying facts, appellants' claims against these insurance companies are distinct. Therefore, they will be treated separately. Each, however, arises in the context of a summary judgment granted in favor of appellees. For that reason, we note at the outset of our discussion that the rules governing summary judgment pursuant to Civ.R. 56 are well established. In order to sustain a summary judgment, three factors must be demonstrated:

"(1) [T]hat there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. See, also, *Johnson v. New London* (1988), 36 Ohio St.3d 60, 61, 521 N.E.2d 793, 794.

## I

The dispute between appellants and appellee USF & G centers on the amount of coverage available under a policy issued by USF & G to David and Gene Kammeyer's employer, Mack Iron. It is uncontested that David and Gene Kammeyer were third-party beneficiaries and that their damages are compensable pursuant to the underinsured motorists provisions of the USF & G policy. It is the amount of coverage available that is at issue.

USF & G concedes that appellants are entitled to claim against a total of $50,000 underinsurance coverage: $25,000 as the face amount of the underinsured motorist provision of Mack Iron's business automobile coverage and an additional $25,000 under the "umbrella" provision of the same policy.

Appellants, however, insist that they are entitled to claim underinsurance coverage up to an amount equivalent to the limits of the $2,000,000 "umbrella" coverage of the policy. Appellants argue that this coverage exists, as a matter of law, because appellee USF & G is unable to properly demonstrate that uninsured/underinsured motorist coverage in an amount equivalent to the motor vehicle liability coverage limits of the policy was offered to Mack Iron and rejected or accepted in a lesser amount by Mack Iron. Appellants maintain that without such an offer, coupled with an express rejection or acceptance in a lesser amount, coverage arises by operation of law pursuant to R.C. 3937.18.

USF & G admits that it has no written waiver of full UM coverage from Mack Iron. USF & G, nevertheless, argues that a writing is unnecessary in this case because of the specific circumstances surrounding the formation of this insurance contract. USF & G states that Mack Iron's president, John Bacon, is an attorney and sophisticated in insurance matters. When Mack Iron sought to purchase insurance, Bacon drafted a document which called for proposals to be submitted by competing insurance agents. This document delineated specific requested coverage for products liability insurance, general liability and automobile insurance. Included in this document was a request that automobile coverage include "uninsured motorists 12,500/25,000." In a later deposition, Bacon testified that he included this amount because he believed it to be the

minimum uninsured/underinsured motorist coverage permitted by law and he did not want the company to pay any premiums greater than required for this coverage. An independent agent, representing appellee USF & G, was the successful bidder for Mack Iron's insurance business. As a result, a policy was written providing for the coverages Mack Iron had sought in its request for a proposal, including $25,000 in uninsured/underinsured motorist coverage.[2]

USF & G argues that R.C. 3937.18 has no application because the contract was formed in a commercial setting and Mack Iron's negotiator was familiar with insurance practices. With such a party, USF & G contends, an offer of full UM coverage would be a mere formality and its express waiver only ceremonial: an elevation of form over substance. USF & G suggests that Mack Iron's negotiator was aware of the availability of full UM coverage and made a business decision to accept less than full coverage. This, USF & G concludes, amounts to an express rejection of full UM coverage and satisfies the statute; therefore, no written rejection is necessary. The trial court agreed, finding, "Such parroting of the obvious is not required by Ohio law."

Both before the trial court and here, the parties have devoted considerable energy discussing the sufficiency of the evidence as it relates to Mack Iron's rejection of full UM coverage and acceptance of lower coverage. We need not reach that issue, however, because an omission of a more fundamental nature occurred which dictates a finding of coverage.

R.C. 3937.18 provides:

"(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following are provided:

"(1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage * * *.

"(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage * * *.

"(B) * * *

---

2. USF & G does not write split limits as originally proposed by the Mack Iron document. The second $25,000 UM coverage which USF & G concedes is available here apparently arises from like coverage under the policy's $2,000,000 umbrella coverage. See *Cincinnati Ins. Co. v. Siemens* (1984), 16 Ohio App.3d 129, 132, 16 OBR 137, 139, 474 N.E.2d 655, 657.

"(C) The named insured may only reject or accept both coverages offered under division (A) of this section. The named insured may require the issuance of such coverages for bodily injury ·or death in accordance with a schedule of optional lesser amounts * * * that shall be no less than the limits set forth in section 4509.20 of the Revised Code for bodily injury or death. * * * "

This statute "is designed to protect persons injured in automobile accidents from losses which, because of the tortfeasor's lack of liability coverage, would otherwise go uncompensated." *Abate v. Pioneer Mut. Cas. Co.* (1970), 22 Ohio St.2d 161, 165, 51 O.O.2d 229, 231, 258 N.E.2d 429, 432. R.C. 3937.18 makes UM coverage in an amount equivalent to automobile liability coverage the norm, "*unless* the insured rejects this equivalent amount and opts for lesser amounts." (Emphasis added.) *Inman v. Natl. Union Fire Ins. Co.* (1989), 49 Ohio App.3d 122, 124, 550 N.E.2d 530, 532. To this end, the Supreme Court of Ohio has repeatedly held that it is mandatory that insurance companies offer UM coverage. *Abate, supra; Kish v. Natl. Ins. Group* (1981), 67 Ohio St.2d 41, 44, 21 O.O.3d 26, 28, 424 N.E.2d 288, 290; *Ady v. W. Am. Ins. Co.* (1982), 69 Ohio St.2d 593, 23 O.O.3d 495, 433 N.E.2d 547 overruled in part on other grounds in *Hedrick v. Motorists Mut. Ins. Co.* (1986), 22 Ohio St.3d 42, 22 OBR 63, 488 N.E.2d 840; see, also, *Scelza v. Employers Mut. Liab. Ins.* (1994), 68 Ohio St.3d 1208, 1209–1210, 624 N.E.2d 1059, 1060–1061 (F.E. Sweeney, J., dissenting). Such an offer is necessarily antecedent to any knowledgeable rejection of full UM coverage. *Id.*

In the instant matter, no offer of full UM coverage was made. As the trial court specifically found, "USF & G never informed Mack Iron of its statutory right to have its UM coverage equal to its liability limits." Without such an offer there can be no informed and knowledgeable waiver of the coverage. Absent an informed knowledgeable waiver, UM coverage arises by operation of law. *Abate, supra.*

Further, we reject USF & G's argument that John Bacon's sophistication as an insurance purchaser makes such an offer unnecessary. See *Grange Mut. Cas. Co. v. Refiners Transport & Terminal Corp.* (1986), 21 Ohio St.3d 47, 50, 21 OBR 331, 334, 487 N.E.2d 310, 314, at fn. 3. It would be poor policy for insureds, insurers and the courts to attempt to adjudicate on a case-by-case basis whether an insured is an insurance sophisticate or a novice. To do so would greatly burden the courts and inject more uncertainty into a subject where much uncertainty still exists. The burden on insurers is far less to merely offer UM coverage in all instances and accept only informed and express waivers of such coverage. Therefore, we follow the above-cited cases which make it mandatory that, in all instances, an insurer must make an offer of UM coverage in an amount equal to liability limits before there can be a knowing and informed waiver of such coverage. Accordingly, those which we construe as appellants'

fourth and fifth assignments of error relating to USF & G are well taken. Appellants' sixth assignment of error, to the extent that it contests the consideration of the degree of an insurance purchaser's knowledge of UM insurance, is also well taken. Appellants' first, second and third assignments of error, which argue that a waiver must be in writing to be express, are not well taken.

II

■ Appellants' claim against appellee Nationwide is based on UM coverage contained in an insurance policy which was issued by Nationwide to appellants and predicated upon the wrongful death of David Kammeyer. Even though appellants concede that David Kammeyer was not an insured under that policy, they argue that the plain language of their Nationwide policy provides UM coverage for any bodily injury for which they are by law due damages from an underinsured or uninsured motorist. According to appellants, pursuant to the wrongful death statute, R.C. 2125.01, and *Wood v. Shepard* (1988), 38 Ohio St.3d 86, 526 N.E.2d 1089, they are parties who are presumed to have been damaged as a result of their son's death. See, also, *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, paragraph one of the syllabus. As such, appellants assert they have, by law, a claim for damages against an underinsured tortfeasor which contractually Nationwide is obligated to pay up to the limits of the policy.

Nationwide responds by arguing that the parties did not contemplate that its policy would provide UM coverage for the death of one who was not insured under that policy. It contends that the deceased had to be an insured before appellants are entitled to UM coverage for his death. In support of its argument, Nationwide directs our attention to cases which hold that it would be erroneous to impose compulsory UM coverage, predicated on an uninsured decedent's wrongful death, because such a claim would be "too remote." *Rotsinger v. State Farm Ins. Co.* (1992), 78 Ohio App.3d 696, 699, 605 N.E.2d 1281, 1283, citing *Hill v. State Farm Mut. Auto Ins. Co.* (Nov. 10, 1988), Lucas App. No. L–87–382, unreported, 1988 WL 121287, and *Smith v. Erie Ins. Group* (1990), 61 Ohio App.3d 794, 573 N.E.2d 1174.

■ In construing an insurance policy we must first look to the language of the contract of insurance itself. Appellants' policy provides as follows:

"PART V

"UNINSURED MOTORISTS [including underinsured motorists]

"The Coverage section is replaced to read:

"COVERAGE

"We will pay bodily injury damages that are due you by law from the owner or driver of an uninsured motor vehicle. Damages must result from an accident arising out of the:

"1. ownership;

"2. maintenance; or

"3. use;

"of the uninsured motor vehicle. We will also pay these damages to relatives.

"An uninsured motor vehicle is:

"1. one for which there is no bodily injury bond or insurance at the time of the accident.

"2. one for which the bond or insurance is less than the amounts required by law where your auto is principally garaged.

"3. one for which the insuring company denies coverage or becomes insolvent.

"4. an underinsured motor vehicle. This is one for which there are bodily injury liability coverage or bonds in effect. Their total amount, however, is less than the limits of this coverage. These limits are shown in your policy's Declarations.

"DEFINITIONS

"The language of this insurance policy includes certain common words for easy understanding. They have exactly defined meanings. In this policy:

"1. the words **'YOU'** and **'YOUR'** mean the policyholder first named in the attached Declarations. They include that policyholder's spouse if living in the same household.

"2. the words **'WE'**, **'US'**, **'OUR'** and **'THE COMPANY'** mean the Nationwide General Insurance Company.

" * * *

"10. the words **'BODILY INJURY'** mean:

"a) bodily injury;    c) disease; or
   b) sickness;    d) death of any person."

By the terms of its policy, Nationwide agrees to pay their insureds, appellants herein, bodily injury damages due to them by law from the owner or driver of an uninsured/underinsured motor vehicle when those damages arise out of the use of that motor vehicle. "Bodily injury" includes the death of *any* person. Appellants are statutorily presumed to have been damaged by the death of their son. Therefore, damages are due them from a tortfeasor who is uncontrovertedly underinsured. The death of appellants' son is that of "any person"; therefore, it constitutes a bodily injury of the type Nationwide has agreed to cover.

In this case, there is no need to resort to statutory interpretation as in *Rotsinger, Hill,* and *Smith, supra.* For, unlike the language of the policies construed in those cases, the language of this policy does not condition UM coverage upon the wrongful death of only an insured. Accordingly, appellants' first assignment of error against Nationwide is found well taken. We need not reach appellants' second and third assignments of error, as they are found moot.

On consideration whereof, the court finds substantial justice has not been done the parties complaining, and the judgments of the Ottawa County Court of Common Pleas relating to both appellees are reversed. Pursuant to App.R. 12(B), and for the reasons stated above, we find appellants are entitled to have judgment rendered in their favor as a matter of law. Accordingly, appellants are entitled to a declaration that the amount of coverage against which they may claim with respect to appellee USF & G is an amount equivalent to the $2,000,000 aggregate umbrella coverage provided in that policy. Appellants are also entitled to a declaration of coverage and may claim against the UM limits of their Nationwide policy. It is ordered that appellees share equally in the court costs of this appeal.

*Judgment reversed.*

ABOOD, P.J., and MELVIN R. RESNICK, J., concur.