Ida BOOTH, Guardian of
Jay Booth, Plaintiff,

v.

GUARANTY NATIONAL INSURANCE
CO., Defendant.

No. 5:99–CV–1592.

United States District Court,
N.D. Ohio,
Eastern Division.

June 7, 2000.

Robert A. Royer, Scanlon & Gearinger, Akron, OH, for Plaintiff.

Gary L. Nicholson, Robert H. Eddy, III, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, for Defendant.

## *MEMORANDUM OPINION*

DOWD, District Judge.

### I.

This is an action for monetary and declaratory judgment arising out of a motor vehicle crash that occurred in Stark County, Ohio on December 5, 1996. As a result of the accident, thirty-three year-old Jay Booth suffered permanent brain damage, was declared incompetent, and is under the guardianship of his mother, the plaintiff in this action. At the time of the crash, Jay Booth was operating a tractor-trailer leased to Berner Trucking Co. ("Berner Trucking"), which was insured by defendant Guaranty National Insurance Company ("Guaranty") under a $4 million umbrella policy. Plaintiff seeks a declaration that Jay Booth is entitled to uninsured/underinsured motorists ("UIM") coverage under that policy.

The parties have filed extensive stipulated facts (Doc. Nos. 13 & 24), and each has moved for summary judgment. (Doc. Nos. 17 & 18). The parties have responded to each other's motions (Doc. Nos. 20 & 21) and plaintiff has submitted a Citation of Additional Authority. (Doc. No. 22).

For reasons set forth below, plaintiff's motion for summary judgment is GRANTED and defendant's motion for summary judgment is DENIED

### II.

On December 5, 1996, Guaranty issued Berner Trucking Policy No. UMC1009172 for the period between June 1, 1996 and June 1, 1997. The policy provides umbrella coverage with a limit of $4 million, and identifies two underlying policies: Cincinnati Insurance Policy No. CPP0630992 and AIG Policy No. CA–565–02–38.

On May 22, 1996, the Miller & Miller Insurance Agency ("Miller & Miller") sent an application on behalf of Berner Trucking to the Great Lakes Insurance Agency ("Great Lakes"). On May 28, 1996 Great Lakes submitted the Berner Trucking application to Guaranty, which issued a quote to Great Lakes on May 29, 1996. Great Lakes forwarded the quote to Miller & Miller on May 30, 1996. On May 31, 1996, Miller & Miller requested that the Guaranty National policy be bound. Guaranty National bounded coverage on June 1, 1996.

Guaranty typed and prepared the umbrella policy on June 18, 1996, with an effective date of June 1, 1996. Guaranty sent the umbrella policy to Great Lakes on June 18, 1996, along with a UIM acceptance/rejection form and a cover letter. Second Stipulations of Fact ("SSF"), Exs. A & B. Great Lakes forwarded the UIM form and policy to Miller & Miller on July 5, 1996, and on July 18, 1996, a representative of Berner Trucking signed the UIM form, rejecting UIM coverage. The UIM form was received by Guaranty National on or slightly after July 24, 1996, well before Jay Booth's December accident.

By its own terms, the Guaranty National umbrella policy afforded no UIM coverage. But plaintiff, relying primarily on *Gyori v. Johnston Coca–Cola Bottling Group, Inc.,* 76 Ohio St.3d 565, 669 N.E.2d 824 (1996) and Ohio Rev.Code § 3937.18, asserts UIM coverage by operation of law. Ohio Revised Code § 3937.18(A)(1) requires that insurance companies which issue motor vehicle liability policies in Ohio offer uninsured and underinsured motorist coverage for an amount of coverage equal to liability coverage. Once offered, the insured may reject coverage or select the UIM coverage in an amount lower than the liability coverage.

In *Gyori,* the Ohio Supreme Court held that an insurer's offer of UIM coverage must be written. *Id.* at 568, 669 N.E.2d 824; *Stefanov v. Personal Service Ins. Co.,* 1998 WL 811324, *2 (1998) (unpublished). Further, a rejection of UIM coverage also must be made expressly (*i.e.,* in writing) and knowingly. *Id.* at 569, 669 N.E.2d 824; O.R.C. 3937.18(c); *Ady v. West American Ins. Co.* 69 Ohio St.2d 593, 597, 433 N.E.2d 547 (1982). If either the offer or rejection are invalid, UIM coverage exists by operation of law. *Id.* at 597, 433 N.E.2d 547. The insurer bears the burden of showing that a written offer was made and that any rejection was express and knowing. *See Schumacher v. Kreiner,* 88 Ohio St.3d 358, 725 N.E.2d 1138 (2000).

## III.

An "offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Garrison v. Daytonian Hotel* 105 Ohio App.3d 322, 325, 663 N.E.2d 1316 (1995) citing 1 Restatement of the Law 2d, Contracts (1981) § 24. An offer is binding on the offeror when accepted by the offeree. *Id.*

There are three possible points in Guaranty's dealings with Berner Trucking where a written offer might have been made. First is the insurance application sent to Great Lakes by Miller & Miller on May 22, 1996. First Stipulations of Fact, ("FSF") Ex. B. This application sought umbrella insurance coverage for Berner Trucking and was forwarded to Guaranty on May 28, 1996. FSF ¶ 18. The last page of the application includes a section for acceptance or rejection of UIM coverage. This section was left blank.

Applications for insurance generally are not offers because their completion does not bind coverage. *See Cleveland Builders Supply Co. v. Farmers Ins. Group of Companies* 102 Ohio App.3d 708, 712, 657 N.E.2d 851 (1995). In fact, the application forwarded to Guaranty National states that "this application does not constitute a binder." FSF Ex. B. Indeed, there is no indication that anyone from Berner Trucking signed the application or filled out portions of it. Morever, the application was not particular to Guaranty National. Rather, it seems to be a form that allows brokers such as Miller & Miller and Great Lakes to find the appropriate insurer for a potential customer.

Guaranty National relies on *Leisure v. State Farm Fire & Casualty Co.,* 187 F.3d 636, 1999 WL 551346 (6th Cir.1999) (unpublished) for the proposition that an insurance application can constitute an offer. In *Leisure,* the defendant insurer provided an "application" for insurance to the plaintiffs that offered $1 million of coverage for

a premium of $222. *Id.* at 1. On the "application" was a section that noted, "In keeping with the provisions of Ohio law, I have been offered the opportunity to purchase Uninsured/Underinsured Motorist Coverage." *Id.* That section gave applicants the option of accepting or rejecting UIM coverage. *Id.*

Though the *Leisure* court refers to the offer in that case as an "application," it was really a quotation; in any event, it is not akin to the "application" at issue in this case. The *Leisure* "application" came from the insurer itself rather than a broker. It stated a specific premium and specific amount of coverage. Hence, it was an offer because it left the recipient with a reasonable belief that acceptance would constitute a contract. The "application" in this case does not do that. To the contrary, it contains a disclaimer stating that applicants should not have such an expectation. The lack of an offer in the application is confirmed by the quote that Guaranty later sent to Berner Trucking, which states that "there may be coverages requested by your application which are not being provided." FSF Ex. C.

■ The second possible offer was the quote Guaranty sent to Berner Trucking on May 29, 1996. FSF Ex. C. The quote clearly states a premium amount and lists the types of coverages being offered. The quote also states that it is from Guaranty National. However, the quote, though perhaps an offer of insurance, is not an offer of UIM coverage. UIM coverage is among the coverages that are specifically listed as "excluded," and the parties have stipulated that "the quote given by Guaranty National Insurance Co. excluded uninsured/underinsured motorists coverage." FSF ¶ 21.

■ The third possible offer of UIM coverage was the UIM acceptance/rejection form that Guaranty sent to Berner Trucking on June 18, 1996, after coverage had been bound and after the effective date of the policy. The UIM form states, "In accordance with your state's statutes, uninsured and underinsured cover-

age will be provided under the policy for persons legally entitled to recover damages from the owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom, and will be afforded with limits up to the policy's Bodily Injury liability limits if purchased by the Named Insured, unless this coverage is rejected entirely . . . or the lower limits of uninsured or underinsured motorists coverage is selected. . . ."

Berner Trucking executed Section I of the form marked "Rejection—Entire" under the following statement:

The undersigned (and each of them) hereby rejects uninsured and underinsured motorists coverage. The undersigned (and each of them) understands and agrees that the provisions of the uninsured and underinsured motorists coverage will not be included in the policy issued and waives any protection of the Ohio statutes in that respect.

When Berner Trucking received the UIM form, a large "X" had been placed next to the signature line for rejecting UIM coverage. SSF ¶ 6. Section II of the form permitted the insured to accept UIM coverage. However, Guaranty National had placed an "N/A" in each of four blanks for stating dollar amounts in Section II. Further, Guaranty National sent the form to Great Lakes Insurance Agency with a correspondence stating, "Please have the attached [UIM] rejection (Section I) signed by the insured and return to us with 35 days." The correspondence did not acknowledge the existence of Section II of the form, which provides for acceptance of UIM coverage.

With the UIM form sent in that condition—with "N/A" marked in the acceptance lines and an "X" at the rejection signature line—it seems clear that the UIM form did not constitute an offer. *Cf. Williams v. Nationwide Property & Cas. Ins. Co.*, 126 Ohio App.3d 86, 709 N.E.2d 907 (1998) (no offer of UIM coverage

where, among other things, agent pre-marked rejection form). As a matter of law, no reasonable recipient of the UIM form would have been justified in believing that his assent to UIM coverage is "invited" and that signing Section II of the UIM form would conclude a bargain for such coverage. *See Garrison v. Daytonian Hotel* 105 Ohio App.3d at 325, 663 N.E.2d 1316 (1995) citing 1 Restatement of the Law 2d, Contracts (1981) § 24. Therefore, Guaranty's UIM form did not constitute an offer.

Since neither the application, the quote, nor the UIM form constitute an offer, Guaranty failed to meet its burden to show that it tendered an offer of UIM coverage as is required under Ohio Rev.Code § 3937.18. *See Schumacher v. Kreiner,* 88 Ohio St.3d 358, 725 N.E.2d 1138 (2000) (insurer bears burden to show existence of offer). Therefore, coverage exists as a matter of law.

### IV.

■ Guaranty makes a number of arguments that are superficially appealing but ultimately unsound. Guaranty insistently argues that Berner Trucking's rejection of UIM coverage was knowing and express, and that to provide coverage by operation of law after such rejection would be to impinge on parties' ability to modify a contract. This argument might carry some weight if there had been an offer in the first instance; however, "such an offer is necessarily antecedent to any knowledgeable rejection of full [UIM] coverage." *U.S. Fidelity and Guaranty Co. v. Kammeyer,* 97 Ohio App.3d 101, 646 N.E.2d 244 (1994). That is, a rejection is invalid unless there was an offer. *Gyori,* 76 Ohio St.3d at 568, 669 N.E.2d 824.

■ Guaranty also relies on deposition testimony of Berner Trucking's insurance agent to the effect that Berner Trucking knew of the UIM coverage but had no interest in it, and that Berner Trucking had a corporate policy of rejecting UIM coverage whenever legally possible. But the argument that the sophistica-tion of an insured reduces the necessity of making an express, written offer of UIM coverage has already been rejected by Ohio courts. *See Gyori,* 76 Ohio St.3d at 566–67, 669 N.E.2d 824 (requiring written offer even though insured "well aware of availability of [UIM] coverage"); *U.S. Fidelity and Guaranty Co. v. Kammeyer,* 97 Ohio App.3d 101, 107, 646 N.E.2d 244 (1994) (citations omitted). Further, Ohio courts have been adamant about not burdening themselves with a case-by-case analysis of whether an offer was made or was not made. *Id.* at 568, 646 N.E.2d 244 (requirement that offer be in writing will prevent "needless litigation"); *Kammeyer,* 97 Ohio App.3d at 107, 646 N.E.2d 244. Ohio courts have also rejected the idea that an insured's insurance history is relevant to the issue of whether an offer was made. *See Williams v. Nationwide Property & Cas. Ins. Co.,* 126 Ohio App.3d at 94, 709 N.E.2d 907.

■ Guaranty National also points out that Berner Trucking rejected UIM coverage, or chose lower limits, in the policies underlying the umbrella policy it offered to Berner Trucking. However, umbrella and excess policies must comport with O.R.C. 3937.18 independently of the underlying policies. *See Scott–Pontzer v. Liberty Mutual Fire Ins. Co.,* 85 Ohio St.3d 660, 665, 710 N.E.2d 1116 (1999) citing *Duriak v. Globe Am. Cas. Co.,* 28 Ohio St.3d 70, 72, 502 N.E.2d 620 (1986).

Finally, Guaranty National relies on cases involving renewal policies that are inapposite to the present case, which involves an original policy. At best, *Hammer v. Lumbermens Mut. Cas. Co.,* 1999 WL 628684, L–98–1283 (1999) and *Remington v. Triplett,* 1999 WL 547815, No. 98CA00070 (1999) stand for the proposition that once UIM coverage is offered on the original policy, UIM coverage does not exist by operation of law if UIM coverage is not offered again when the policy is renewed. The policy covering the period of Jay Booth's accident is not a renewal

policy, so *Hammer* and *Remington* are inapplicable.

Having found that Guaranty cannot meet its burden to show that it made a written offer of UIM coverage to Berner Trucking, the Court does not reach the issue of whether a rejection is valid when it is executed during the policy period but before a plaintiff's accident. Also, because defendant did not raise the argument, the Court does not reach the issue of whether the 1997 amendment to O.R.C. 3937.18 [1] is applicable.

## V.

Plaintiff's motion for summary judgment is GRANTED; defendant's motion for summary judgment is DENIED. Judgment declaring plaintiff's entitlement to coverage will be entered forthwith. Since plaintiff's prayer for relief indicates a demand for money judgment as well as declaratory judgment, the Court will schedule a status conference to discuss further proceedings.

IT IS SO ORDERED.

1. The amendment creates the presumption of a valid offer where there is a signed rejection. Plaintiff addressed the applicability of this amendment in her motion; but defendant did not.