JOHNSON ET AL., APPELLANTS, *v.* GREAT AMERICAN INSURANCE COMPANY ET AL., APPELLEES.

(No. 13232—Decided
February 24, 1988.)

*A. William Zavarello,* for appellants.

*James N. Kline,* for appellee Great American Insurance Company.

*Michael A. Malyuk,* for appellee Godard Insurance Agency.

MAHONEY, P.J. Susan and Wayne Johnson appeal from an order of the trial court granting summary judgment to defendants Great American Insurance Company ("Great American") and Godard Insurance Agency ("Godard"). We affirm.

## Facts

In February 1976, Wayne Johnson purchased an automobile insurance policy from Great American through its agent Godard. The policy provided coverage for personal injury liability with maximum limits of $100,000 per person and $300,000 per accident. The policy originally provided uninsured motorist coverage in these same amounts. On November 10, 1976, Wayne signed a written request to reduce the maximum limits of uninsured motorist coverage to $12,500 per person and $25,000 per accident.

In August 1980, Wayne requested that his new wife, Susan, be added to the policy as a named insured. On March 4, 1985, Susan was involved in an accident with defendant, Richard A. Smith. The Johnsons commenced this action against Smith on November 19, 1985. Great American and Godard were eventually added as defendants by the Johnsons, seeking a declaration that they were entitled to underinsured motorist coverage.

In an order dated June 5, 1987, the trial court granted summary judgment to Great American and Godard. The court also determined that there was no just cause for delaying the Johnsons' appeal pursuant to Civ. R. 54(B). On appeal, the Johnsons contend that:

## Assignments of Error

"I. The trial court erred in holding that 'any named insured may reject or reduce the amount of uninsured or underinsured coverage and that act will affect all other named insureds' when Ohio statutes provided that each named insured had individual rights.

"II. The trial court erred in holding that there exist no remaining issues of material fact when the effect of Wayne Johnson's reduction of uninsured motorist coverage and the nonexistence of any authorized reduction of underinsurance remain issues of fact."

In order to properly grant a summary judgment motion pursuant to Civ. R. 56(C), a trial court must review the pleadings, deposition testimony,

and other evidentiary materials and determine that:

"* * * (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 327, 4 O.O. 3d 466, 472, 364 N.E. 2d 267, 274; *Cunningham* v. *Mottice* (Nov. 5, 1986), Summit App. No. 12593, unreported.

Although a party seeking summary judgment must inform the trial court of the basis for its motion, the movant need not necessarily support its motion with evidentiary materials which *directly negate* its opponent's claim. *Celotex Corp.* v. *Catrett* (1986), 477 U.S. 317, 323. Rather, the movant may sometimes meet its burden by pointing out to the trial judge "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. See, also, *Hodgkinson* v. *Dunlop Tire & Rubber Corp.* (1987), 38 Ohio App. 3d 101, 526 N.E. 2d 89.

In both of their assignments of error, the Johnsons contend that the trial court erroneously determined that, as a matter of law, the Johnsons were not entitled to underinsured motorist coverage and that questions of fact did not exist in this regard. Although we do not entirely agree with the trial court's reasoning, we do find that summary judgment was appropriate under the facts *sub judice.*

The Ohio Legislature first provided for the mandatory offering of underinsured motorist coverage in R.C. 3937.181, effective June 25, 1980 (138 Ohio Laws, Part I, 1458, 1459-1460). At that time, the statute provided in pertinent part:

"(B) Each automobile liability or motor vehicle liability insurance company that provides uninsured motorist coverage under section 3937.18 of the Revised Code shall offer underinsured motorist coverage as optional protection, up to the limits of the uninsured motorist coverage, to each applicant for new automobile or motor vehicle liability insurance and to each named insured policyholder at the time of the first policy renewal after September 1, 1980, if underinsured motorist coverage is not in force or has not been previously offered.

"Each such insurance company shall provide information, prescribed by the superintendent of insurance, as to the type and cost of protection available under underinsured motorist coverage and permit such applicants and renewal policyholders to exercise the option to purchase such coverage. Insurance companies shall not be required to obtain or retain written rejections of such coverage.

"* * *

"(D) Nothing in this section shall prohibit the inclusion of 'underinsured motorist' coverage in any 'uninsured motorist' coverage provided in compliance with section 3937.18 of the Revised Code.

"* * *"

The dispositive issue in this controversy concerns the amount of underinsured motorist coverage to which the Johnsons are entitled. Great American and Godard contend that the Johnsons are entitled to such coverage only in the maximum amounts of $12,500 per person and $25,000 per accident. Since the tortfeasor, Smith, carried liability insurance in those same amounts, Great American and Godard contend that the Johnsons have no underinsured motorist claim under R.C. 3937.181(A).

We agree that where a tortfeasor carries liability insurance in an amount equal to the amount of underinsured motorist coverage carried by an injured party, the tortfeasor is not "underinsured" according to the statute. *Ohio Cas. Ins. Co.* v. *Yoby* (1985), 23 Ohio App. 3d 51, 54-55, 23 OBR 96, 99-100, 491 N.E. 2d 360, 364; *Ware* v. *Nationwide Ins. Co.* (1986), 33 Ohio App. 3d 74, 514 N.E. 2d 440.

A review of the record reveals that a question of fact exists as to whether Great American formally offered underinsured motorists coverage to the Johnsons at the time of their first policy renewal after September 1, 1980. However, we find that this issue is not material to the disposition of this appeal. The statute clearly provides that underinsured motorist coverage need only be provided up to the limits of a policyholder's uninsured motorist coverage and that an insurer may choose to include underinsured motorist coverage as part of the uninsured motorist coverage in a policy. R.C. 3937.181(B) and (D).

The uncontroverted evidence indicates that Great American complied with R.C. 3937.181(B) by amending the definition of "uninsured motorist" to include "underinsured motorist." R.C. 3937.181(D). The evidence also indicates that the Johnsons carried only the statutory minimum uninsured motorist coverage with maximum limits of $12,500 per person and $25,000 per accident pursuant to Wayne's written request for such in 1976.

The Johnsons first contend that Wayne's written request is ineffective as to Susan. This contention is based upon the fact that uninsured motorist coverage has been held to be "personal" in nature, attaching to the insured rather than a particular vehicle. See *Ady* v. *West American Ins. Co.* (1982), 69 Ohio St. 2d 593, 596, 23 O.O.

3d 495, 497, 433 N.E. 2d 547, 549. The Johnsons also rely upon R.C. 3937.18 which, as effective June 25, 1980 (see 138 Ohio Laws, Part I, 1458), provided:

"(A) * * * The named insured shall have the right to reject such uninsured motorist coverage, or may require the issuance of coverage for bodily injury or death in accordance with a schedule of optional lesser amounts approved by the superintendent, that shall be no less than the limits set forth in section 4509.20 of the Revised Code for bodily injury or death. Unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer.

"* * *"

The Johnsons claim that Susan, as a "named insured," had a statutory right to personally accept or reject uninsured motorist coverage equivalent to her liability coverage of $100,000 per person and $300,000 per accident. Hence, Wayne's 1976 written request for lesser amounts is claimed to be ineffective as to Susan. We agree with the general proposition that if an insured has not expressly rejected uninsured motorist coverage equivalent to the insured's liability limits, such coverage is provided by operation of law. *Abate* v. *Poineer Mut. Cas. Co.* (1970), 22 Ohio St. 2d 161, 51 O.O. 2d 229, 258 N.E. 2d 429, paragraph two of the syllabus.

Relying upon *Continental Ins. Co.* v. *Roth* (Fla. App. 1980), 388 So. 2d 617, the trial court held that "[a]ny named insured may reject or reduce the amount of the uninsured/underinsured motorist protection and that act will affect all named insureds."

This question does not appear to have been addressed previously by any

Ohio appellate courts.[1] The Johnsons correctly state that *Continental Ins. Co., supra,* is distinguishable due to the fact that the Florida uninsured motorist statute involved in that controversy expressly provided that "any insured named in the policy" could reject such coverage. However, the Florida court also explained the policy considerations apparent in the statute and stated:

"* * * We hold that *any named insured,* as the statute says, may reject U/M coverage for *all* insureds — named or additional. This holding makes the most sense to us, both as legislative interpretation and as logical result: We envision no rational apportionment of the U/M premium among named insureds, should some want the coverage, and others not; nor can we believe that it was the intention of the legislature, Continental, or the Roths, that a bargain for U/M coverage be struck per capita, within each policy, rather than on a policy-by-policy basis." (Emphasis *sic.*) *Id.* at 618.

While we find these policy considerations persuasive, we need not go so far today. Under the facts *sub judice,* Susan was added to Wayne's existing policy with Great American. Thus, Susan impliedly consented to the terms of that policy. To hold otherwise would require an insurer to make all disclosures required by R.C. Chapter 3937 to an insured that is added to an existing policy prior to binding the new insured. If an insured that is added to an existing policy does object to the

terms of that policy, the new insured may seek to subsequently modify those terms or purchase a separate policy. However, at the time that the name of a new insured is added to an existing policy, the new insured is bound by the policy's existing terms absent a specific request otherwise.

In so holding, we make no disposition of whether one named insured may reject or waive the statutory rights of another named insured, when both individuals are named as insureds at the time that the waiver or rejection is executed.

The Johnsons also contend that Wayne's request for a reduction in his uninsured motorist coverage was ineffective as to anyone. The basis of this claim is that Wayne did not execute the reduction request in a knowing or "informed" fashion. Wayne submitted an affidavit in support of this contention which provided, *inter alia:*

3. On or about November 10, 1976, I called Catherine Fisher, an employee of Defendant GODARD. I sought her advice as to how to reduce my premium payment while maintaining full coverage. Catherine Fisher told me to reduce my uninsured motorists coverage. [As a result of this action, my premiums were reduced by Seventeen Dollars ($17.00).]

"4. In direct reliance on Defendant['s] * * * recommendation, I signed a reduction request for my uninsured motorists coverage. I did not know, nor did Defendant * * * or Defendant GREAT AMERICAN in-

---

[1] Great American contends that the issue of whether one named insured may reject underinsured motorist coverage on behalf of other named insureds has been addressed by the Ohio Supreme Court in *Hoskins* v. *State Farm Mut. Auto. Ins. Co.* (1986), 26 Ohio St. 3d 87, 26 OBR 75, 497 N.E. 2d 87. We do not agree. In *Hoskins,* an insured expressly rejected underinsured motorist coverage, permitted his policy to lapse, and subsequently had the policy reinstated. The precise issue addressed by the Supreme Court was whether the insured was an "applicant for new automobile or motor vehicle liability insurance" pursuant to R.C. 3937.181. The court answered in the negative in a plurality opinion.

76

form me of other methods to reduce my premium payments.

"5. Initially my uninsured motorists coverage was $100,000 each person/$300,000 each accident. Following the reduction, the coverage was $12,500/$25,000.

"6. In making the recommendation, Catherine Fisher did not explain what uninsured coverage meant. I did not understand that I was rejecting full coverage for me and my family to an amount equal to the coverage I provided if I injured another."

We find that there is an "absence of evidence to support" Wayne's conclusion that he did not execute the request in controversy on an "informed" basis. *Celotex Corp.* v. *Catrett, supra,* at 325. Wayne signed a separate and distinct document which expressly reduced the amount of his uninsured motorist coverage. There was no indication that Wayne was "absent his faculties, or that he could not read or write." *Brady* v. *Universal Underwriters Ins. Group* (1973), 37 Ohio App. 2d 107, 112, 66 O.O. 2d 198, 201, 307 N.E. 2d 548, 551. Under such circumstances, we find summary judgment to be appropriate. *Id.* at 112-113, 66 O.O. 2d at 201, 307 N.E. 2d at 552.

In light of our finding that Susan was bound by Wayne's 1976 reduction in uninsured motorist coverage and that Great American and Godard fully complied with the mandates of R.C. 3937.18 and 3937.181, we find the remaining issues of fact raised by the Johnsons to be immaterial.

### Summary

The Johnsons' assignments of error are overruled. The judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

QUILLIN and GEORGE, JJ., concur.