SCELZA et al., Appellants,

v.

EMPLOYERS MUTUAL LIABILITY INSURANCE, d.b.a.
Employers Insurance of Wausau, Appellee.

[Cite as *Scelza v. Employers Mut. Liab. Ins.* (1992), 89 Ohio App.3d 555.]

Court of Appeals of Ohio,
Summit County.

No. 15451.

Decided Sept. 9, 1992.

Scanlon & Gearinger Co., L.P.A., and Timothy F. Scanlon, for appellants.

Reminger & Reminger Co., L.P.A., and Nicholas D. Satulla, for appellee.

COOK, Judge.

On February 1, 1988, seventeen-year old William Scelza ("Scelza") was riding as a passenger in a car driven by Eric Metzger ("Metzger") and owned by Metzger's brother. The car went off the road and over an embankment resulting in serious injury to Scelza and others in the car.

Each passenger first looked to the driver's insurance for recovery. The driver's two insurance policies had a combined maximum bodily injury limit of $400,000. When this amount was apportioned among the several claimant passengers, Scelza received $161,321, which was insufficient to cover his claims as brought by his parents.

The Scelzas then sought coverage from Employers Insurance of Wausau ("Wausau") based on an automobile policy Wausau had issued James Scelza's employer Ecolab, Inc., covering his company car. The car was provided to James Scelza, William's father, to be used without restriction, for both business and personal use. Wausau denied the Scelzas' claim for underinsured motorist coverage because the policy did not provide for such coverage.

The Scelzas then filed a declaratory judgment action against Wausau requesting that the court "declare, adjudge and decree: " * * * That [the Scelzas] are entitled to underinsured motorist coverage under said policy in the amount of Two Million Dollars * * *." The case was tried to the court with extensive stipulations of fact. Those stipulations included that James Scelza was an insured and his son was covered as a member of his family living in the household. That action concluded with the court declaring that no underinsured coverage existed.

The judgment included findings of fact and the court's reasoning. The court found that in the process of seeking a new policy of insurance covering its company vehicles in various states, Ecolab hired Marsh & McLennan, an insurance brokerage firm to solicit bids according to Ecolab's specifications. Ecolab instructed Marsh & McLennan to design the bid specifications so that bidders would know that Ecolab wished to reject uninsured/underinsured ("UM/UIM")

coverage to the extent allowed by each state's law. Ecolab wanted to totally eliminate UM/UIM coverage where possible. Marsh & McLennan designed the specification and requested bids from various insurance companies. Ecolab ultimately accepted Wausau's bid and received the initial policy which provided for UM/UIM limits of $25,000. One of the attachments to the policy was a form which explained Ohio UM/UIM coverage, including the insured's right to such coverage in an amount equal to the liability coverage. The form provided space for the insured to select the amount of UM/UIM coverage desired or to reject the UM/UIM coverage. Ecolab rejected UM/UIM coverage and sent the form back to Wausau. Wausau issued a change endorsement deleting the UM/UIM coverage prior to William Scelza's accident.

The Scelzas now appeal asserting one assignment of error:

"The trial court erred in granting judgment to the defendant, The Employers Mutual Liability Insurance of Wausau."

R.C. 3937.18 requires that every automobile liability insurance policy issued in this state provide UM/UIM motorist protection in an amount equivalent to the vehicle liability coverage, and such coverage can be eliminated from a policy of insurance only by the insured's express rejection of that coverage. *Grange Mut. Cas. Co. v. Volkmann* (1978), 54 Ohio St.2d 58, 8 O.O.3d 70, 374 N.E.2d 1258.

The Scelzas argue that the court's judgment was incorrect because (1) Wausau did not offer UM/UIM coverage in an amount equivalent to the automobile liability coverage [1] as required by R.C. 3937.18, and (2) since it was not offered, rejection of the coverage was not possible. We disagree with appellants' argument and agree with the trial court's finding that "Ecolab expressly rejected UM/UIM coverage. All the necessary events for that rejection occurred prior to the tragic traffic accident * * *."

We find that the coverage required by R.C. 3937.18 was offered by Wausau through the "stuffer" included with the issued policy. The stuffer stated in pertinent part:

"OHIO UNINSURED/UNDERINSURED MOTORISTS INSURANCE

"Ohio law now requires that both UNINSURED MOTORISTS INSURANCE and UNDERINSURED MOTORISTS INSURANCE must be provided on your auto liability policy unless rejected in writing. If not rejected, these coverages must be provided at the same limit as the bodily injury liability limit on your policy unless you elect a lower limit, which cannot be less than the limit required by the Ohio Financial Responsibility Law.

---

1. The liability limit of the policy was $2 million.

"If yours is a new policy it will provide UNINSURED MOTORISTS INSURANCE and UNDERINSURED MOTORISTS INSURANCE at the same limit as the bodily injury liability limit on your policy unless you elect a different limit or completely reject coverage."

The representative of Ecolab signed the selection of coverage section of the form, expressly rejecting UM/UIM coverage, as follows:

"SELECTION OF COVERAGE
"I, the undersigned elect the following Ohio UNINSURED MOTORISTS INSURANCE and UNDERINSURED MOTORISTS INSURANCE coverage:

"(check and complete one option)
"_____ Provide the minimum limit required by the Ohio Financial Responsibility Law.
"_____ Provide the following alternate limit $_____.
"_____ Provide a limit equal to the policy's bodily injury auto liability limit.
"  X   I reject UNINSURED MOTORISTS INSURANCE and UNDERINSURED MOTORISTS INSURANCE.

"Signature /s/ Brian Foltz
"Be sure to sign       Name of Policyholder Ecolab, Inc.
 and complete          Policy Number 0328–02–0934308
                       Date    11/17/87    "

Because the statute requires that the policy not be issued without UM/UIM coverage equivalent to the amount of liability coverage, the Scelzas would have an argument that $2 million of UM/UIM coverage was in effect by operation of law from the date of issuance until the date of the offer and rejection. Where, as here, an offer of coverage was made with the issuance of the policy and was expressly rejected prior to the occurrence of an accident for which a claim is made, the rejection is effective to delete UM/UIM coverage. The statute does not specify a time limit for rejection.

We find the stuffer to be a sufficient offer even though it is not in strict compliance with Ohio Adm.Code 3901–1–39. That regulation was enacted in 1981 to support the newly passed R.C. 3937.181 [2] which introduced underinsured coverage. The scope of Ohio Adm.Code 3901–1–39 is limited to "insurers * * * who * * * do not include in their uninsured motorist coverage, underinsured motorist coverage * * *." Nowhere in the record is there evidence that this insurer meets the applicability requirements.

---

**2.** R.C. 3937.181 was repealed effective June 23, 1982.

The assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

BAIRD, P.J., and REECE, J., concur.