**LUCAS, Appellant,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Appellee.**

[Cite as *Lucas v. Liberty Mut. Ins. Co.* (1994), 93 Ohio App.3d 438.]

Court of Appeals of Ohio,
Summit County.

No. 16343.

Decided March 16, 1994.

*James Gutbrod* and *Gary Cole,* for appellant.

*Kerry Randall–Lewis,* for appellee.

QUILLIN, Presiding Judge.

Appellant, Steven J. Lucas, appeals from the trial court's order granting summary judgment in favor of appellee, Liberty Mutual Insurance Company. We affirm.

On April 23, 1988, appellant sustained serious injuries in a traffic accident, causing him to incur medical bills in excess of $40,000. At the time of the accident, appellant was insured under a policy issued by appellee with liability coverage limits of $100,000/$300,000. Specifically at issue here are the uninsured/underinsured limits contained in that policy.

According to the record, at the time appellant purchased the policy, he signed an endorsement for uninsured/underinsured motorist coverage with limits of $15,000 and $30,000 per person and per accident respectively. He chose this amount by checking a box on a preprinted form. Appellant's insurance agent later informed him, however, that the coverage amounts he had chosen were not available, and that the next lowest amount offered was $50,000/$100,000. Appellant agreed to that amount, although he never signed a written application specifying his choice. Appellee's sales representative, Gregory Getzinger, testified that he offered appellant coverage equal to his liability limits:

"Q. Is it my understanding then when you—when you went to meet with Mr. Lucas that he had asked for 100/300 liability insurance coverage with an underinsured/uninsured policy provision for 15,000/30,000?

"A. Yes, sir. He—I recommended the same kind of bodily limits for uninsured as bodily injury. Mr. Lucas reinforced the fact that he was a senior citizen and looking to stay within a fixed budget. And I explained to him the cost difference between the limits, and he—he wanted to stay with the limits that he had from his previous policy, which was a Hartford company, which also had the 15/30 on there, also."

After the accident, appellee paid appellant $50,000 pursuant to his uninsured/underinsured motorist coverage. Appellant brought a declaratory judgment action arguing that, although he had chosen the $50,000/$100,000 coverage limits, he was nonetheless entitled to an amount equal to the full amount of his liability coverage. Appellee moved for summary judgment, which the trial court granted. Appellant appeals and raises one assignment of error:

"The trial court erred in granting Defendants' Motion for Summary Judgment because, as a matter of law, Plaintiff was entitled to $100,000.00/$300,000.00 uninsured/underinsured motorists coverage."

Appellant argues that he is entitled to $100,000/$300,000 uninsured/underinsured motorist coverage pursuant to R.C. 3937.18. Specifically, appellant maintains that he did not expressly reject uninsured/underinsured coverage equal to the full amount of his liability coverage and that by law he is therefore entitled to the full amount. We disagree.

R.C. 3937.18 provides:

"(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following are provided:

"(1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for bodily injury or death under provisions approved by the superintendent of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom;

"(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall

provide protection for an insured against loss for bodily injury, sickness, or disease, including death, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage at the time of the accident. * * *

" * * *

"(C) The named insured may only reject or accept both coverages offered under division (A) of this section. * * * "

This section has been almost uniformly interpreted to require an express rejection of uninsured/underinsured motorist coverage in an amount equal to liability coverage. See, e.g., *Grange Mut. Cas. Co. v. Volkmann* (1978), 54 Ohio St.2d 58, 8 O.O.3d 70, 374 N.E.2d 1258; *Abate v. Pioneer Mut. Cas. Co.* (1970), 22 Ohio St.2d 161, 51 O.O.2d 229, 258 N.E.2d 429. But, see, *Paxson v. Shelby Mut. Ins. Co.* (Dec. 12, 1991), Columbiana App. No. 90–C–73, unreported, 1991 WL 262879 (holding that express rejection of coverage is not required in order to request a lesser amount of coverage).

Ohio courts have disagreed, however, as to what constitutes such a rejection. It is clear that a separately signed provision in an insurance contract rejecting an equal amount of underinsured coverage is sufficient to constitute an express rejection of such coverage. See, e.g., *Brady v. Universal Underwriters* (1973), 37 Ohio App.2d 107, 66 O.O.2d 198, 307 N.E.2d 548. An insured's completion of a form requesting a lesser amount of underinsured coverage has also been found sufficient, where there was no evidence that the insured requested that amount on an uninformed basis. *Johnson v. Great Am. Ins. Co.* (1988), 44 Ohio App.3d 71, 75–76, 541 N.E.2d 100, 103–105.

At least three courts, including this court, have held that an express rejection need not be in writing:

" * * * We have found no statute or cases that require the 'express rejection' to be in writing. It may be an oral rejection but, oral or written, there must be an express rejection or modification of the underinsured motorists coverage. An implied rejection or modification will not satisfy the requirements of R.C. 3937.18(C). * * * " *Stroud v. Cincinnati Ins. Co.* (Mar. 25, 1992), Hamilton App. Nos. C–91 0325 and C–91 0329, unreported, 1992 WL 63296; see, also, *Kelly v. Natl. Union Fire Ins.* (Mar. 28, 1990), Wayne App. No. 2511, unreported, 1990 WL 34840; *Reddington v. Fireman's Fund Ins. Co.* (July 2, 1992), Mahoning App. No. 91 C.A. 117, unreported, 1992 WL 161157. In *Reddington,* the insured's affidavits indicating an oral rejection were sufficient evidence of an express rejection although no written documents existed.

Appellant directs our attention in particular to three cases which he argues construe the express rejection requirement more strictly. In *Poots v. Motorist Ins. Co.* (1986), 38 Ohio App.3d 48, 526 N.E.2d 71, this court held that a written application for coverage in an amount less than liability coverage did not constitute an express rejection. In that case, however, the insureds neither signed separate forms rejecting coverage nor was there evidence that they were offered an amount equal to liability coverage.

Also cited by appellant is *Garrett v. State Farm Mut. Auto. Ins. Co.* (June 2, 1988), Montgomery App. Nos. 10693 and 10775, unreported, 1988 WL 59393, in which premium notices sent to the insureds included a written offer to provide uninsured motorist coverage equal to the insureds' liability limits. To accept the offer, the insureds were required to place a check mark in a certain location on the form and return it with the premium payment. There was no evidence that the insureds had done so, and the court held that they had not made an express decision to accept less than full coverage.

Appellant also relies upon *Makus v. Brooks & Stafford Co.* (Dec. 31, 1987), Cuyahoga App. No. 53028, unreported, 1987 WL 32124, in which a check mark on a form indicating a choice of lower coverage was again held insufficient to constitute an express rejection. In *Makus,* however, the insurance company required its insureds to indicate their explicit rejection with their signature on the back of the application in order to reject such coverage. The insureds failed to do so and the court held that they had not rejected equal coverage.

We believe the present case to be distinguishable from those cited by appellant. Here, appellant was given a form entitled "Ohio Uninsured/Underinsured Motorist Coverage Option Form," which specifically and clearly stated at the top:

"Ohio law requires us to provide you Underinsured Motorist Coverage and Uninsured Motorist Coverage with limits equal to your liability coverage limits. You have the right to accept these limits, select lower limits of Uninsured Motorist Coverage and Underinsured Motorist Coverage or you can reject these coverages entirely.

" * * *

"NOTE: These coverages are available only on a combined basis. When increased limits of Uninsured Motorist Coverage are purchased, corresponding increased limits of Underinsured Motorist will also be provided. You may select Uninsured Motorist Coverage and Underinsured Motorist Coverage in limits up to the limit of liability shown in Part A Coverage on your Policy Declaration.

"In order that our records may correctly reflect the coverages you want, please check the appropriate block next to the limits you desire."

There was also evidence that appellant's insurance agent offered appellant full coverage. Further, appellant testified that he understood he was checking the lowest amount available, but that he did so to avoid the higher premiums:

" * * * So you initially requested the lowest limits you could get?

"A.  Right, yes.

"Q.  And why is it that you wanted the lowest limits?

"A.  Economic reasons.

"Q.  Premium payments?

"A.  (Witness nodding head up and down.)

"Q.  Is that a 'Yes'?

"A.  Yes."

In light of the above factors, we believe that appellant's intentional decision to choose a lower limit as indicated on the form sufficiently rejected full coverage. Appellant's assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

COOK and DICKINSON, JJ., concur.