WILLIAMS, Appellee,

v.

NATIONWIDE PROPERTY AND CASUALTY INSURANCE
COMPANY, Appellant, et al.

[Cite as *Williams v. Nationwide Prop. & Cas. Ins. Co.* (1998), 126 Ohio App.3d 86.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 95 CA 59.

Decided April 14, 1998.

*Greg A. Rossi,* for appellee.

*John C. Pfau,* for appellant.

VUKOVICH, Judge.

This matter presents a timely appeal from a judgment of the Mahoning County Court of Common Pleas in a declaratory judgment action which held that the appellee (Lisa Williams) had not expressly rejected uninsured/underinsured motorist coverage in amounts equivalent to her policy liability limits and the appellant (Nationwide Insurance Company), therefore, could not subject appellee's claim to an amount lower than the amount of her liability policy limits.

We are of the opinion that the judgment of the trial court should not be disturbed for the reasons set forth below.

## STATEMENT OF THE CASE

On September 12, 1992, the appellee sustained injuries from an automobile accident with an uninsured driver. She subsequently sought to recover from the appellant-insurance company under the terms of the uninsured/underinsured motorist coverage ("UMC") provision of her automobile policy. Appellant contended that the paid insurance policy provides UMC to the appellee in the amount of $12,000/$25,000 and not the $50,000/$100,000 limits of appellee's liability coverage. Because UMC is statutorily mandated in an amount no less than the amount of an insured's liability policy unless expressly waived in writing, the overwhelming question of fact before the trial court was whether the appellee made an express waiver of UMC in an amount equal to her policy liability coverage limits.

On September 17, 1993, appellee filed a complaint for declaratory judgment to have the court determine the limits of her UMC. Appellant timely answered. With leave of the court, appellee filed an amended complaint on January 31, 1994, adding James Kellogg, appellant's agent, as a named defendant.

In Count I of the amended complaint, appellee contended that she did not knowingly, expressly, or voluntarily reject UMC in an amount equal to her liability limits. In Count II, appellee contended that agent Kellogg negligently

sold her UMC in the amount of $12,000/$25,000, that she was never offered UMC equivalent to her liability coverage as required by R.C. 3937.18(A), and that she merely followed instructions and signed the application where she was told to sign, thus incurring the lesser coverage.

Appellee requested a jury trial for Count II. Both defendants timely answered, and the parties agreed to bifurcate the two counts.

On August 10, 1994, Count I was tried to the court referee. The parties agreed and stipulated to the issuance of policies and the coverage amounts stated in the policies. The referee found in appellee's favor on September 7, 1994. Though appellant timely objected, the court adopted the findings of the referee on February 14, 1995. Appellant then made timely appeal to this court. The trial for Count II is still pending.

Appellant raises two assignments of error in this appeal. The first contends that the court erred in finding that appellant is obligated to provide $50,000/$100,000 UMC; the second contends that the court erred in not permitting evidence of appellee's prior insurance history.

## THE APPLICABLE STATUTE

The applicable statutory provision is R.C. 3937.18, which mandates that every automobile liability insurance policy issued in Ohio provide UMC in an amount equal to the vehicle liability coverage. The statute provides:

"(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are provided to persons insured under the policy for loss due to bodily injury or death suffered by such persons:

"(1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage * * *.

"(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage * * *.

"(B) Coverages offered under division (A) of this section shall be written for the same limits of liability. No change shall be made in the limits of one of these coverages without an equivalent change in the limits of the other coverage.

"(C) The named insured may only reject or accept both coverages offered under division (A) of this section. * * * Unless the named insured requests such coverages in writing, such coverages need not be provided in or supplemental to a

renewal policy where the named insured has rejected the coverages in connection with a policy previously issued to him by the same insurer * * *."

## STATEMENT OF THE FACTS

In 1991, James Kellogg ("Kellogg"), a co-defendant in the declaratory judgment action but not a party to this appeal, was working. as an agent for appellant. He first sold appellee a homeowner's policy; then, he sold her an automobile insurance policy through Colonial Insurance because he was able to offer a better rate than she had been getting. Testimony from Kellogg indicated that appellee carried $50,000/$100,000 liability coverage and $12,500/$25,000 UMC on the Colonial policy.

About six months later, Kellogg contacted appellee with regard to writing an automobile insurance policy through appellant. Kellogg provided appellee with an application for general coverage. The application stated on the second page:

"I have been offered Uninsured Motorist Coverage, Yes X̲.

"I desire Uninsured Motorist Coverage limits of (12,500/25,000 ) which are lower than my bodily injury limits."

Kellogg acknowledged that he placed the "X's" on the application form prior to sending it to appellee. Kellogg quoted a premium for the coverages marked on the application form.

At trial, Kellogg indicated that he had twice discussed with appellee the fact that liability limits would be $50,000 whereas UMC would be $12,000. This statement contradicted Kellogg's deposition testimony, wherein Kellogg stated that he had no conversation with appellee regarding different liability limits.

Kellogg further testified at trial that he had discussed the difference in premium costs based on different coverages. Kellogg also acknowledged that he had discussed appellee's right to have equal limits of liability and UMC. This testimony also conflicted with Kellogg's deposition testimony, wherein he said that he had neither offered appellee UMC corresponding to her liability coverage nor discussed the difference in premiums should she select equal coverage limits.

A second document submitted to appellee with the application for insurance was labeled "Authorization Statement for Ohio Uninsured Motorists Coverage (Including Bodily Injury caused by Underinsured Motorists)." This authorization states in part:

"Ohio Law * * * requires motorists to carry Uninsured Motorist Coverage (UMC)—unless a person elects to reject this coverage. *Such rejection must be in writing.*

"The Law also requires that UMC, when carried, be at the same limits as one's Bodily Injury Liability Coverage limits—*unless lower limits are requested in writing.* The lowest limits permitted by the State's Financial Responsibility Law are $12,500 per person/$25,000 per occurrence."

The document discusses UMC and states:

"UMC Recommended * * * This coverage is recommended to you, since some motorists still drive without insurance or-without enough insurance."

The bottom of the document sets forth:

**"TO: NATIONWIDE INSURANCE**

"I have read the above information about Uninsured motorists Coverage by Underinsured motorists. I have decided:

"X want Uninsured Motorist Coverage at the following limits:

"X 12,500/25,000 (state minimum)."

Appellee signed this form.

Appellant contends that the evidence establishes that appellee voluntarily read and signed the rejection forms expressly accepting and requesting lower limits of coverage. Appellant also contends that the application for coverage and the "Authorization statement for Ohio Uninsured Motorists Coverage" demonstrate the written offer of equal UMC limits. Appellant, relying upon *Scelza v. Emp. Mut. Liab. Ins.* (1992), 89 Ohio App.3d 555, 626 N.E.2d 958, appeal dismissed as improvidently allowed (1994), 68 Ohio St.3d 1208, 624 N.E.2d 1059, contends that its offer satisfies the mandate of R.C. 3937.18. *Scelza* is distinguishable. In that case, an employee/insured brought a declaratory judgment action against the insurer to determine the insured's entitlement to UMC under the terms of insured's policy. The court of appeals ruled in favor of the insurer, finding express rejection by the employer of UMC conveyed to the insurer by specifications set forth in the insurance bids prior to obtaining coverage and thereafter by express written rejection.

In the instant case, appellant points out that after receiving the application forms in the mail, appellee had no followup questions regarding coverage and signed both documents as marked, indicating acceptance of the lower coverage limits. Appellant also argues that appellee had previously signed a Colonial Insurance application and rejection sheet for identical coverage and, furthermore, had carried the same coverage in a policy with MIC General Insurance Corporation prior to the Colonial policy.

Appellee testified that when she discussed a new automobile insurance policy with Kellogg, she did not know what the limits of coverage were on her other policies. Appellee could not recollect what her policy limits were when she made

application for the Colonial policy. Essentially, she relied on the information given to her by Kellogg.

Though appellee acknowledged that she signed the application for automobile insurance with Nationwide, she testified that it was agent Kellogg who placed the "X's" on the form, indicating the amount of coverage, and that she did not do so. Kellogg selected $12,000/$25,000 UMC and $50,000/$100,000 liability, that he filled out the application forms, and that he pre-marked the coverages and sent them to her for signature. Thus, she never actively requested UMC with $12,500/$25,000 limits.

Not only was appellee never presented with options regarding coverage limits, she was never quoted the difference in premiums for different coverages. Appellee testified that she knew little or nothing about automobile policies and relied solely on Kellogg's advice regarding the amounts of coverage. The only selection appellee actively made was with regard to her policy deductible.

## CASE LAW

 It is clear that R.C. 3937.18 requires an express rejection in every case where the UMC coverage is less than the amount of liability coverage. *Poots v. Motorist Ins. Cos.* (1986), 38 Ohio App.3d 48, 49, 526 N.E.2d 71, 72–73; *Lucas v. Liberty Mut. Ins. Co.* (1994), 93 Ohio App.3d 438, 441, 638 N.E.2d 1076, 1077–1078. What constitutes this requisite "express rejection" has been the source of consternation to several courts, but we can safely conclude that our appellate inquiry must embrace two fundamental axioms: (1) It is the duty of the insurer to demonstrate "express rejection," *Lucas, supra,* at 441, 638 N.E.2d at 1077–1078, and (2) the question of whether a party waived the mandatory offering provisions of R.C. 3931.18 is a question of fact that should not be disturbed by a reviewing court absent a finding of an abuse of discretion.

 In attempting to meet its burden of proving an express rejection, the insurer must generally demonstrate that the insured signed a "separate provision rejecting equivalent amounts of uninsured motorist coverage, that the language of such provision was clear and conspicuous, and that the signature was not the result of restraint, disability or misunderstanding." *Anderson v. Hartford Underwriters Ins. Co.* (1994) 96 Ohio App.3d 341, 346, 645 N.E.2d 75, 77. An insured's completion of a form requesting a lesser amount of UMC is sufficient where there is no evidence the insured requested a lesser amount on an uninformed basis. *Johnson v. Great Am. Ins. Co.* (1988), 44 Ohio App.3d 71, 541 N.E.2d 100.

 Express rejection can be oral or written, "providing the facts surrounding the communication and/or written instrument sufficiently and reliably demon-

strate * * * an intentional express rejection." *Id.* In those cases holding that express rejection can be orally made, "extrinsic evidence" has been submitted "demonstrating the insured had expressly rejected equivalent uninsured motorist coverage." *Id.* However, "implied rejection or modification will not satisfy the requirements of R.C. 3937.18(C)." *Stroud v. Cincinnati Ins. Co.* (Mar. 25, 1992), Hamilton App. Nos. C–910325 and C–910329, unreported, 1992 WL 63296.

In *Reddington v. Fireman's Fund Ins. Co.* (July 2, 1992), Mahoning App. No. 91 C.A. 117, unreported, 1992 WL 161157, this court previously considered express rejection of UMC. Therein, the insured provided affidavits attesting to the fact that there had been oral rejection of equal limits. The court found this sufficient evidence of express rejection although no written documents existed.

■ The fact that appellant must offer UMC in an amount equal to the policy liability limits is not in dispute. The manner in which the offer must be made is, however, the central question of this review. Appellant contends that the evidence establishes that appellee was, in fact, offered by way of the written language in the application and rejection form as well as the policy itself, limits of UMC equal to the policy liability limits.

Appellee avers that appellant was required manifestly to offer UMC coverage at the same limits as policy liability coverage and evidence this offer by presentation of a premium quote for such coverage. Appellee also contends that the offer must be made *before* rejection can be indicated. Appellee relies upon *United States Fid. & Guar. Co. v. Kammeyer* (1994), 97 Ohio App.3d 101, 646 N.E.2d 244, which found that without an offer of UMC equal to that of liability, "there can be no informed and knowledgeable waiver of the coverage." *Id.* at 107, 646 N.E.2d at 248.

■ Appellant has the burden of demonstrating that appellee made a knowing rejection of the higher UMC. *Ady v. W. Am. Ins. Co.* (1982), 69 Ohio St.2d 593, 597, 23 O.O.3d 495, 497–498, 433 N.E.2d 547, 549–550. Included in this burden is the obligation to prove that the customer was aware of the UMC provision, understood it, and agreed with it. *Id.*

In *Poots, supra,* the insured and insurance agent never discussed the fact that the company was required to offer UMC in an amount equal to liability coverage. The insured signed an application providing for unequal coverage. They did not sign a separate provision expressly rejecting equivalent amounts of UMC and liability coverage. The court found that a written application for coverage in an amount less than liability coverage did not constitute express rejection, where there was no evidence of an offer of UMC in an amount equal to liability coverage and the insured did not sign separate forms rejecting coverage. *Id.* at 49, 526 N.E.2d at 72–73.

*Poots* appears dispositive of the issue. The trial court found neither prior nor contemporaneous discussions or facts indicating that Kellogg ever *offered* equal coverages. There is no evidence that appellee was given a premium quote for equal coverage limits or that appellee wanted to eliminate or reduce UMC to reduce her premium. Despite the wording on the application forms and appellee's signatures thereon, appellee did not reject equal coverage: Kellogg made that decision for her. The equal coverage is prescribed by law.

Here, it appears that the trial court properly found that a pre-packaged insurance plan wherein the insurer's agent makes the determinations about UMC without a prior express offer by the insurer and rejection by the insured of equal coverage limits does not satisfy the requirements of R.C. 3937.18, where the insurer fails to demonstrate by a preponderance of the evidence that the insured had an understanding of UMC and expressly rejected it. Thus, the first assignment of error is found to be without merit.

Appellant next argues that the court should have admitted evidence of appellee's insurance history prior to her Colonial policy and her Nationwide policy. The referee ruled that this evidence was irrelevant to the issues at hand. Appellant offered no case law to support his argument in favor of admission of this evidence. Clearly, appellant wanted the evidence admitted to demonstrate that appellee had previously carried the minimum UMC.

Appellee acknowledged that she carried the prior MIC policy through her father and she was not aware of the coverage limits. Though appellee offered no specific case law in support, given the burden of proof placed upon appellant, the evidence of prior coverage is irrelevant to the issue at hand. Thus, the second assignment of error is found to be without merit.

The decision of the lower court is affirmed.

*Judgment affirmed.*

Cox and WAITE, JJ., concur.