Appellants, Robert C. Muerchke, M.D., et al, question Judge Caroline Friedland's order granting the motions for summary judgment of appellees GRE-Midwestern Indemnity Co. (GRE) and St. Paul Insurance Companies (St. Paul). They claim, as error, the judge's finding that GRE's commercial liability policy was not required to provide Muerchke with underinsured motorist coverage (UIM) and that Muerchke rejected $2,500,000 in UIM under his St. Paul policy. They protest that a material issue of fact was in dispute concerning the presence and value of (UIM) coverage in liability policies issued by both carriers. Further, they challenge the judge's denial of their motions for summary judgment. For the following reasons, we agree, affirm the portion of the judgment finding the provisions of R.C. 3937.18 (A) (2) constitutional, reverse the remaining issues and enter judgment for Muerchke.
On November 2, 1996, Muerchke, an orthopedic surgeon, was president of and employed by Robert C. Muerchke, M.D. Inc. (RCM, Inc.), a professional corporation. At that time he was driving a 1993 Lexus 400 SC owned by JAAK, Inc. (JAAK), a corporation of which he was president but the entire stock of which was owned by his five daughters. The Lexus was leased to RCM, Inc. by JAAK.
Muerchke, accompanied by a business associate, was operating the 1993 Lexus westbound on Miles Avenue running errands for the Solon, Ohio office, when a car operated by Carolyn Storey, traveling eastbound, failed to yield the right of way when making a left hand turn and caused Muerchke to drive his car off the road and into a ditch. As a result, he sustained very serious and permanent injuries that have limited his ability to continue his practice as an orthopedic surgeon.
In 1992, Muerchke, as an individual, applied for and was issued a St. Paul PAK II policy providing a combination of separate insurance policies: automobile, homeowners, recreational vehicle and small boat policies with up to $500,000 in what is described as "Personal Liability Limit". Also, through a "Personal Umbrella Liability Endorsement", (70800) the PAK II can provide up to $5,000,000 in what is described in its policy as "extra liability protection above and beyond the coverage provided by your Pak II and other primary policies." This umbrella endorsement expresslyexcludes coverage for uninsured or underinsured motorists losses or claims.
St. Paul claims that, as part of the application process, its agent, Neil Corrigan, presented Muerchke with an "Ohio PAK II Uninsured/Underinsured Motorists Coverage Selection or Rejection" form. (Attached as Exhibit A). On that form an applicant is provided with the ability to select or reject "Basic UM/UIM Coverage" in the amounts of $100,000/$300,000 or $500,000, but not to exceed the primary liability limit of his PAK II. Corrigan claims Muerchke selected $500,000 in "Basic UM/UIM Coverage" matching his primary liability limit. The next portion of the form provides for an applicant to exercise an "option" to purchase additional "UM/UIM Coverage limits up to the excess or umbrella liability limits that you have purchased" in the amounts of $500,000/$1,000,000/$2,000,000 and up to $5,000,000. Corrigan claimed Muerchke did not select, but rejected the additional$2,000,000 UM/UIM Coverage and signed the form filled in by Corrigan. Corrigan claimed that $2,000,000 in UM/UIM coverage would have increased the premium by $123.00 per car.
RCM, Inc. was the named insured under a GRE commercial package policy issued in November 1995, providing insurance coverage for property loss, general liability, umbrella liability, crime/fidelity and inland marine losses or claims. Among other coverages it provided $1,000,000 in coverage for claims arising out of "Hired and Non-Owned Auto Liability". The "Umbrella Liability Coverage Part" provides $2,000,000 per occurrence for automobile related liability claims but only as modified by the exclusions and definitions within this part. It is stipulated that uninsured/underinsured motorist coverage was neither offered to nor rejected by RCM, Inc.
Storey had $50,000 per person automobile liability coverage through a policy issued to her by State Farm Insurance and in effect on November 2, 1996.
On January 17, 1997, Muerchke, his wife, and children filed a complaint with jury demand against Storey claiming negligence, and against GRE and St Paul requesting a declaratory judgment of their rights to UIM coverage under the two insurance policies. Answers were filed and discovery undertaken. In October of 1997, both GRE and St. Paul consented to Muerchke accepting Storey's offer of her $50,000 per person policy limits, and she was dismissed from the suit.
Motions for summary judgment were filed by all the parties. On March 20, 1998, Judge Carolyn J. Friedland held an evidentiary hearing, complete with oral testimony, before determining whether to grant St. Paul's summary judgment. Earlier she had announced that she was granting GRE's motion, because she found its policy to be a commercial, not an automobile policy and, therefore, GRE was not required to provide UIM coverage. At that hearing the following statements were made:
 THE COURT: For purposes of this morning, we are looking at the narrow issue of whether or not the underinsured coverage was expressly rejected.
 MR. HOUSEL: This matter that you wished to have this hearing today, to take additional testimony, I was never quite clear, although you were kind enough to tell me in chambers about, was additional testimony to — relative to factual issues of the effective rejection or non-rejection of the underinsured/uninsured motorist coverage under the umbrella policy of Dr. Muerchke.
On April 6, 1998, Judge Friedland issued her opinion and order granting the motions of GRE and St Paul and denying those filed by Muerchke.
Muerchke's first assignment of error states:
 I. THE TRIAL COURT ERRED IN GRANTING GRE-MIDWESTERN'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING THE PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT.
Muerchke contends that GRE, by policy language and operation of law, was required to provide RCM, Inc. and him with UIM coverage. Muerchke maintains that because GRE's policy provides coverage for liability claims arising out of an insured's use of a motor vehicle, albeit only a "hired or non-owned" one in the course of RCM, Inc. business, it qualifies as an automobile liability policy and must have provided RCM, Inc. with UM/UIM coverage equal to the liability policy limits under the mandates of R.C.3937.18. He contends, under the terms of the policy, he is an insured engaged in the business of RCM, Inc. and the Lexus is leased from a separate corporation.
GRE submits that a business liability policy issued to RCM, Inc. was designed and intended to protect only the professional corporation, and because RCM, Inc. did not request, expect, or pay for UM/UIM coverage it cannot be imposed as a matter of law. It further argues that the Lexus is neither "hired's nor "non-owned" because two of JAAK's shareholders are members of Muerchke's household.
R.C. 3937.18 (A), in effect at the time the GRE policy was issued, provided in pertinent part:
 (A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are provided to persons insured under the policy for loss due to bodily injury or death suffered by such persons:
 (1) Uninsured motorist coverage which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for bodily injury or death under provisions approved by the superintendent of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death suffered by any person insured under the policy. . . .
* * *
 (2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to an insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage.
 (B) Coverages offered under division (A) of this section shall be written for the same limits of liability * * * *. (Emphasis added.)
 (C) The named insured may only reject or accept both coverages offered under division (A) of this section. The named insured may require the issuance of such coverages for bodily injury or death in accordance with a schedule of optional lesser amounts approved by the superintendent that shall be no less than the limits set forth in section 4509.20 of the Revised Code for bodily injury or death * * *.
The GRE policy "Commercial General Liability Coverage" provides in pertinent part:
1. Insuring agreement.
 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damages" to which this insurance applies* * * *.
The "Hired Auto and Non-Owned Auto Liability" endorsement modified the insuring agreement by expanding the insuring agreement and redefining who is an insured:
Hired Auto and Non-Owned Auto Liability
COMMERCIAL GENERAL LIABILITY PART
 The insurance provided under Coverage A (Section I) applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your employees in the course of your business or the use of any "non-owned auto" in your business by any person other than you.
 With respect to the insurance provided by this endorsement, the Commercial General Liability Coverage Form is revised as follows:
* * *
 1. WHO IS AN INSURED (Section II) is deleted and replaced by the following:
Section II — WHO IS AN INSURED
 1. Each of the following is an insured under this insurance to the extent set forth below:
A. You;
 B. Any person using a "hired auto" with your permission;
 C. With respect to a "non-owned auto" any partner or executive or officer of yours, but only while such "non-owned auto" is being used in your business; and
 D. Any other person or organization but only with respect to their liability because of acts or omissions of an insured under A., B., or C., above.
2. None of the following is an insured:
* * *
 B. Any partner or executive officer with respect to any "auto" owned by such partner or officer or a member of his or her household.
* * *
4. DEFINITIONS (Section V) is revised as follows:
The following definitions are added:
* * *
 17. "Hired auto" means any "auto" you lease, hire, or borrow. This does not include any "auto" you lease, hire or borrow from any of your employees or members of their households, or from any partner or executive officer of yours.
 18. "Non-owned auto" means any "auto" you do not own, lease, hire or borrow which is used in connection with your business. However, if you are a partnership a "non-owned auto" does not include any auto owned by any partner.
* * *
A cursory examination of the express language of this portion of the GRE policy clearly reveals that $1,000,000 in liabilitycoverage would be available to pay automobile related liability claims against RCM, Inc. and Muerchke. Muerchke clearly is "any person using a "hired auto" with your [RCM's] permission" under Section II (1) (B)
Next addressing whether the Commercial Umbrella Liability Coverage under the GRE policy provides additional automobile liability coverage, we look only to the language:
1. Insuring Agreement
 A. We will pay on behalf of the insured the "Ultimate net loss" in excess of the "applicable underlying limit" which the insured becomes legally obligated to pay as damages because of "bodily injury", "property damages", * * * to which this insurance applies. * * * only to:
(1) "Bodily injury" or "property damage":
(a) Occurring during this policy period; and
(b) Caused by an "occurrence";
* * *
3. Exclusions
This insurance does not apply to:
* * *
 D. "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any "auto" unless coverage is provided by "underlying insurance".
* * *
Section II — Who Is An Insured
1. If you are designated in the declarations as:
* * *
 C. An organization other than a partnership or joint venture, you are an insured.
2. Each of the following is also an insured:
A. As respects the "auto hazard"
 (1) Anyone using an "auto" you own, hire, or borrow including any person or organization legally responsible for such use provided it is with your permission; and
* * *
Section V — Definitions
* * *
 5. "Auto Hazard" means all "bodily injury and "property damage" for which liability insurance is afforded under the terms, other than limits of insurance, of the auto policy of "underlying insurance"
* * *
 16. "Underlying insurance" means the policies listed in schedule of underlying insurance and includes any renewal or replacement of such policies.
* * *
Again, a cursory examination of the express language of this portion of the GRE policy clearly reveals that $2,000,000 more inliability coverage would be available to pay automobile related claims against RCM, Inc. and Muerchke. Muerchke clearly is any person using a hired auto * * * "with your [RCM's] permission".
Because of recent pronouncements by the Ohio Supreme Court, this court has an advantage not given to Judge Friedland or the parties, in determining whether UIM coverage is available to Muerchke under the GRE policy. In Selander v. Erie Ins. Group
(1999), 85 Ohio St.3d 541, 709 N.E.2d 1161, and Scott-Pontzer v.Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660,710 N.E.2d 1116, it was determined that R.C. 3937.18 does not distinguish between commercial and consumer automobile or motor vehicle liability policies. GRE's policy, like that of the Fivestar General Business Liability Policy in Selander, provided the insureds with liability coverage for claims arising out of the use of "hired" and "non-owned" vehicles. The Court held "[w]here motor vehicle liability coverage is provided, even in limited form, uninsured/underinsured coverage must be provided."Selander, at 544.
In Scott-Pontzer, supra, an employee of Superior Dairy, driving his wife's car and not within the scope of his employment, was found to be an insured under Superior's Liberty commercial automobile liability policy with UIM coverage and its separate "umbrella/excess" policy that did not offer UIM coverage. The Court reasoned that the identity of "insureds" within the commercial automobile policy was ambiguous. The Court reasoned that because a business entity could neither sustain personal injury nor operate a vehicle, and the UIM coverage thereunder was not contingent upon being "on the job," it followed that uninsured motorist coverage in that commercial policy must extend to all employees. The Court then, pursuant to its opinion inSelander, supra, found the umbrella policy was also required to provide UIM coverage as a matter of law.
The Liberty umbrella policy in Scott-Pontzer, however, restricted liability coverage to only employees acting within the scope of employment. Liberty argued that if the employee was not operating a motor vehicle while on the job, he was not insured for the umbrella (excess) liability coverage and, therefore, not covered with UIM coverage. Under the language of that policy, the Court held that such restriction was intended to apply only to excess liability claims. Because no UIM coverage was even offered, the Court reasoned that the "on the job" restriction could not have been intended for UIM claims and, therefore, the employee was entitled to UIM benefits under the umbrella policy as well.
In the instant case because the GRE policy provided for automobile liability coverage but failed to offer any UIM coverage, it arose by operation of law equal to the liability limits of the policy's commercial general and commercial umbrella liability coverages.
Muerchke's first assignment of error is well taken.
Muerchke's second assignment of error reads:
 II. THE TRIAL COURT ERRED BY GRANTING ST. PAUL'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING THE PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT.
Muerchke claimed, in his motion for summary judgment, that St. Paul should be denied a $50,000 set-off against his UIM claim because the 1994 amendment to R.C. 3937.18 (A) (2), permitting such reduction, is unconstitutional. We disagree and affirm the portion of the judgment finding the provisions of R.C. 3937.18
(A) (2) constitutional. See Beagle v. Walden (1997), 78 Ohio St.3d 59, 676 N.E.2d 506.
Proceeding next to the granting of St. Paul's motion for summary judgment and the denial of Muerchke's, we address the basics.
Civ.R. 56 (C) provides in relevant part:
 Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule.
In Stanaczyk v. Fontanez (March 12, 1998), Cuyahoga App. No. 72130, unreported, this court stated that ""[a] court is precluded from considering supplemental oral testimony introduced for the first time at a hearing on a motion for summary judgment under Civ.R. 56.'" Id., quoting Carrabine Construction Co. v.Chrysler Realty Corp. (1986), 25 Ohio St.3d 222, 495 N.E.2d 952, syllabus.
It follows, by definition, that "summary judgment may only be granted if the motion demonstrates the absence of any material issue of fact and, by holding an evidentiary hearing, the court effectively conceded that issues of material fact do exist."Stanaczyk, supra.
The judge's decision to hold a hearing and listen to sworn testimony on what she must have considered a material issue of fact was clearly an error. It is apparent that she was uncertain about the offer of UIM coverage, the nature and effectiveness of St. Paul's rejection form, and the situations surrounding Muerchke' s endorsing the waiver of the higher UIM coverage. Disputes over material facts are the exact reason to deny summary judgment. Any situation that creates a factual issue outside the confines of Civ.R. 56 (C) mandates that the trier of fact solve that conflict.
While we could reverse and remand this issue for a jury trial, judicial economy mandates our examination of the assignment of error on the controlling and material facts not in dispute.
It is uncontroverted that the PAK II policy, with endorsements, provides $2,500,000 in liability coverage to persons insured thereunder. Equally uncontroverted is the fact that the "PAK II Personal Package Policy — Ohio" (AKA primary liability, the 99063 OH CONTRACT) with its sundry endorsements comprises a single insurance policy.
The personal umbrella liability endorsement (70800) expressly provides "Extra Auto Liability Insurance" while excluding coverage for UIM losses or claims. It states in relevant part:
"Types of Claims Not Covered By This Endorsement"
 In addition to claims not covered that are listed in your PAK II policy, this endorsement does not cover the following types of claims:
 2. We won't cover losses involving automobile no-fault insurance claims or uninsured or underinsured motorist losses or claims.
R.C. 3937.18 mandates St. Paul to "provide" $2,500,000 in UIM coverage to Muerchke if that amount is what he requested in liability coverage. The Court in Gyori v. Johnson Coca-ColaBottling Group, Inc. (1996), 76 Ohio St.3d 565, 568,669 N.E.2d 824, held that R.C. 3937.18 is "best served by requiring the offer to be in writing."
In the instant case St. Paul claims that Exhibit A satisfies its obligation to explain the mandates of R.C. 3937.18. They claim Muerchke selected his "primary" level of UIM coverage, and, when presented with an offer of "additional" UIM coverage "under the umbrella portion of its policy," chose to decline it. St. Paul relies upon Lucas v. Liberty Mut. Ins. Co. (1994),93 Ohio App.3d 438, 638 N.E.2d 1076
for the position that its "Selection or Rejection" form satisfies the mandates of Ohio law.
St. Paul misinterprets both statutory obligations and the facts in Lucas. The language used by Liberty in its form differs markedly from that of St. Paul's. Exhibit A fails to advise Muerchke that his PAK II policy will automatically provide him with UIM coverage in an amount equal to his liability coverage unless he elects a different limit or completely rejects such coverage. St. Paul further asserts that its form is evidence of its offer to provide $2,500,000 in UIM coverage to Muerchke. St. Paul is incorrect in that assertion because this form merely advises Muerchke that he has an option of selecting or rejecting UIM coverage. Specifically, this "OHIO PAK II UNINSURED/UNDERINSURED MOTORIST COVERAGE SELECTION OR REJECTION" form, requires Muerchke to first select "BASIC UM/UIM COVERAGE" of nomore than $500,000 and once having done that he then becomes eligible to exercise an option of purchasing additional UM/UIM coverage, within certain restrictions, up to the amount of his umbrella liability limit. St. Paul claims Muerchke rejected higher limits because he signed this form upon which a box was marked off, indicating he acknowledged rejection of "additional" UM/UIM coverage under his umbrella portion of his policy.
We find this form does not satisfy the requirements of R.C.3937.18 because it fails to provide the mandated coverage, and, therefore, is not a valid rejection of that UIM coverage. Muerchke did not accept or reject $2,500,000 in UIM coverage because it was never offered or provided to him by St. Paul.Abate v. Pioneer Nut. Cas. Co. (1970), 22 Ohio St.2d 161,258 N.E.2d 429; Curran v. State Auto. Nut. Ins. Co. (1971),25 Ohio St.2d 33, 266 N.E.2d 566;Ady v. W. Am. Ins. Co. (1982), 69 Ohio St.2d 593,433 N.E.2d 547; Gyori, supra. Instead, he was offered only up to $500,000 with an option of purchasing more.
Accordingly, we hold that Muerchke has $2,500,000 in UIM coverage through the St. Paul PAK II policy by operation of law pursuant to R.C. 3937.18, Abate, supra. The second assignment of error is well taken.
We affirm the portion of the judgment finding the provisions of R.C. 3937.18 (A) (2) constitutional, reverse that portion granting summary judgment in favor of St. Paul Insurance Companies and GRE-Midwestern Indemnity Co. and enter final judgment for Muerchke et.al. on their motions for summary judgment.
It is ordered that appellants recover of appellees their costs herein taxed.
This court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, P.J., AND JOHN T. PATTON, J.,CONCUR.
 __________________________________ JUDGE ANNE L. KILBANE
 OHIO PAK II UNINSURED/UNDERINSURED MOTORISTS COVERAGE SELECTION OR REJECTION
Named Insured ______________________ Policy Number ___________________
 Under Ohio law, you have the option of selecting or rejecting Uninsured Motorists Coverage (UM/UIM) UM/UIM coverage pays the compensatory damages that you are entitled to recover from the owner of operator of an uninsured or underinsured land motor vehicle. Please complete this form by indicating your options below.
BASIC UM/UIM COVERAGE
 I select Basic UM/UIM Coverage at the following limit (this limit cannot exceed the primary liability limit of your PAK II):
 $100,000
 $300,000
 $500,000
 I reject Basic UM/UIM Coverage. I understand that this means I do not have any UM/UIM coverage on my PAK II.(If you check this box, you must also check the rejection box under the Additional UM/UIM Coverage section below.)
ADDITIONAL UM/UIM COVERAGE
 If you have purchased excess or umbrella liability coverage on your PAK II, you also have the option of purchasing additional UM/UIM Coverage is available only if the basic UM/UIM Coverage limit that you selected above is equal to the primary liability limit of your PAK II. Please indicate your selection below.
 I select Additional UM/UIM Coverage at the following limit:
 $ 500,000 $3,000,000
 $1,000,000 $4,000,000
 $2,000,000 $5,000,000
 I reject additional UM/UIM Coverage on my policy. I understand that coverage on the excess or umbrella portion of my policy and that my policy and that my UM/UIM Coverage is limited to the amount of coverage that I selected under the Basic UM/UIM Coverage section of this form.
_______________________________________________________________
Signature of Insured _____________________ Date _______________
Signature of Spouse ______________________ Date _______________
Agency Name and Address _______________________________________
_______________________________________
_______________________________________
(Part 1 is insured copy, Part 2 is agent copy, Part 3 is company copy)
 EXHIBIT A